**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**B&B STAFFING MANAGEMENT,**                                          **PLAINTIFF**
**LLC**


**v.**                                                          **Civil No. 1:25-cv-258-HSO-BWR**


**INTEGRITUS HEALTHCARE, INC.**                                      **DEFENDANT**


**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT**
**INTEGRITUS HEALTHCARE, INC.'S MOTION [6] TO DISMISS FOR LACK**
**OF PERSONAL JURISDICTION**

Defendant Integritus Healthcare, Inc. seeks dismissal of Plaintiff B&B

Staffing Management, LLC's claims for lack of personal jurisdiction under Federal

Rule of Civil Procedure 12(b)(2). *See* Mot. [6]. Defendant's Motion [6] should be

denied because the Court possesses personal jurisdiction over Integritus.

## I. BACKGROUND

This case arises from Defendant Integritus Healthcare, Inc.'s ("Defendant" or

"Integritus") alleged failure to pay for healthcare staffing services rendered by

Plaintiff B&B Staffing Management, LLC ("Plaintiff" or "B&B"). *See* Am. Compl.

[4]. B&B is a Mississippi limited liability company that supplies staffing services to

healthcare facilities. *See id.* at 1. Integritus is a Massachusetts not-for-profit

corporation with a principal place of business in Massachusetts, *see* Dkt. [8], that

operates "skilled nursing, rehabilitation and assisted living facilities" in

Massachusetts, Decl. of Integritus [6-1] at 1.

On February 8, 2023, B&B entered into a "Supplemental Staffing Services Agreement" with Integritus to provide supplemental staff to Integritus's healthcare facilities in Massachusetts.  *See* Dkt. [4-1] ("Agreement").  The Agreement called upon B&B to supply Integritus with staff to perform "Certified Nursing Aide, L.P.N. and RN Nursing services" in exchange for payment.  *Id.* at 1.  But Integritus did not pay B&B directly.  Rather, B&B utilized non-party Viva Capital Funding, LLC ("Viva"), a Texas-based factoring company, to pay its staff.  *See* Am. Compl. [4] at 4. As a factoring company, Viva pays "the staff provided by [B&B] to its clients" and in return, Viva "takes an assignment of the payment owed to [B&B] from the client." *Id.*  In turn, B&B's clients pay Viva directly, and Viva deducts the amount for payroll and other charges from that sum and sends the remainder to B&B.  *Id.*  If a client fails to pay Viva, Viva charges interest on the past due amount owed to it, which B&B is required to pay.  *See id.*

According to B&B, Integritus breached the Agreement by defaulting on four January 2024 payments totaling "$159,224.621."  *Id.* at 4.  And because Integritus failed to pay Viva, Viva began charging interest on the past due balance.  *Id.* at 4. B&B alleges it accrued $36,639.42 in past due fees and interest because of Defendant's breach before it paid those charges to avoid breaching its contract with Viva.  *See id.*  B&B also claims that Integritus's breach forced it to "terminate fifteen staffing contracts" because it could no longer afford to pay staff, and "caused [B&B] to have to pull its staff from Defendant's facilities at the beginning of the

second term of the contract" resulting in lost revenue and profits. *Id.* Moreover, B&B allegedly incurred "numerous incidental charges" totaling $42,000.00. *Id.* at 5.

In August 2024, B&B demanded $225,785.36 from Integritus, reflecting the past due January invoices, the interest it owed to Viva, and its lost profits. *Id.* On December 1, 2024, Integritus paid B&B $159,224.62 to fully compensate it for the January 2024 invoices, but it did not reimburse B&B for the $36,639.42 in interest it accrued or for lost profits. *See id.* B&B claims $116,400.00 in lost profits from the period of March 2024 to September 2024, which it calculated by using an average weekly revenue of $4,850.00 for the 24-week period. *Id.* In total, Plaintiff claims that Integritus still owes it $195,032.69. *See id.*

Invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, B&B filed suit advancing state-law claims for breach of contract and negligence. *See id.* at 5-6. Integritus seeks dismissal of Plaintiff's claims on grounds that the Court lacks personal jurisdiction over it. *See* Mot. [6].

## II.  DISCUSSION

A.    Legal Standard

"Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). On a Rule 12(b)(2) motion, "the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438

F.3d 465, 469 (5th Cir. 2006) (citation omitted).  A court "must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (alterations in original).

Where, as here, a federal court is sitting in diversity, it may "exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quotation marks and citation omitted).

B.     Mississippi's Long-Arm Statute

Mississippi's long-arm statute permits personal jurisdiction over a nonresident defendant if the defendant: "(1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in Mississippi; or (3) conducts any business or performs any character of work in Mississippi." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing Miss. Code Ann. § 13-3-57 (2020)).  "Satisfaction of any of the three prongs, be it through contract, tort, or doing business, establishes personal jurisdiction over a nonresident corporation." *Id.* (quoting *Adara Networks Inc. v. Langston*, 301 So. 3d 618, 623 (Miss. 2020)).

Here, the only dispute is whether the contract prong is satisfied.  *See* Resp. [10] at 4 (arguing the contract prong is satisfied); Reply [12] ("Plaintiff's argument

for personal jurisdiction focuses on the contract prong of the long-arm statute."). "To fall within the ambit of the contract prong of Mississippi's long-arm statute, two prerequisites must be shown: (1) the contract must be made with a resident of Mississippi; and (2) it must be performed either in whole or in part by either party in Mississippi." *Omni Tech., LLC v. Know Ink, LLC*, No. 1:18-cv-334-HSO-JCG, 2019 WL 4739298, at \*5 (S.D. Miss. Sept. 27, 2019).  Because it is undisputed that Plaintiff is a resident of Mississippi, the Court need only focus on the second factor.

"Typically, the contract prong of the long-arm statute is satisfied by the performance of a contractual obligation, such as the rendering of services, in Mississippi." *El Dorado Oil & Gas, Inc. v. Alaniz*, No. 1:22-cv-248-LG-BWR, 2024 WL 289353, at \*3 (S.D. Miss. Jan. 25, 2024) (collecting cases), *reconsideration denied*, No. 2:24-cv-00025, 2024 WL 1481061 (S.D. Tex. Mar. 7, 2024).  But "where no contractual obligations are performed in Mississippi, the contract prong is inapplicable." *Id.* at \*4 (collecting cases).  This Court has "cautioned against a 'narrow and unfounded view of what performance of a contract entails.'" *Omni Tech., LLC*, 2019 WL 4739298, at \*5 (quoting *Med. Assurance Co. of Miss. v. Jackson*, 864 F. Supp. 576, 578 (S.D. Miss. 1994)).

B&B contends that the "Agreement was partially performed" in Mississippi because: (1) Plaintiff filled Defendant's request for staff by "sending Mississippi residents to Massachusetts to perform work"; (2) B&B contracted with the staff it sent to Massachusetts and scheduled those workers; (3) B&B paid its staff; (4) B&B "generated the invoices from its office in Mississippi"; (5) B&B "eventually received

5

the payments in Mississippi"; (6) B&B "maintained certain management authority over the temporary staff"; (7) B&B "monitor[ed] the performance of its staff"; (8) B&B "retained the right to hire, fire, and reassign its staff members"; and (9) B&B "conducted the required orientation programs and in-service training for staff in Harison County, Mississippi." Resp. [10] at 4; *see also* Decl. of B&B [9-1] at 3. Integritus counters that these allegations relate to Plaintiff's "internal business practices – not services required to be performed under the Agreement." Reply [12] at 3. It claims that no part of the Agreement required performance in Mississippi and "taking actions in Mississippi in furtherance of contract obligations alone is insufficient. The contract must require or specify Mississippi as the place of performance." Mem. [7] at 9-10 (citing *McCain Builders, Inc. v. Rescue Rooter, LLC,* 797 So. 2d 952, 955-56 (Miss. 2001)).

This Court rejected Defendant's argument in *Cypress Pharmaceuticals, Inc. v. CRS Management, Inc.,* 827 F. Supp. 2d 710 (S.D. Miss. 2011). There, the plaintiff, a pharmaceutical company, contracted with the defendant "to conduct bioequivalence testing for two prescription drugs." *Id.* at 712. The plaintiff claimed it performed part of the contract in Mississippi because it "mailed the test supplies from its Madison, Mississippi facility to Gateway, in Missouri." *Id.* at 717. The defendant argued that the contract prong was not satisfied because "jurisdiction is proper under the contract prong of the long-arm statute only if the parties' contract actually requires that performance, or some part thereof, is to occur in the forum" and "nothing in the subject contract required that [the plaintiff] send the study

6

supplies from its Mississippi headquarters." *Id.* In rejecting that theory, this Court reasoned that "the potential for jurisdiction based on the contract prong is not foreclosed solely because the agreement does not expressly dictate that a party's performance of some part of the agreement is to occur in the forum state." *Id.*; *see also Skin Consultants, LLC v. Textron Aviation, Inc.*, No. 4:17-cv-166-SA-RP, 2018 WL 4621904, at *3 (N.D. Miss. Sept. 26, 2018) (rejecting the defendant's arguments that the contract prong was not satisfied where "none of the services outlined in the contracts were to be performed in Mississippi," because part of the contract—airline repairs—occurred in Mississippi). Rather, when an agreement is silent as to the place of performance, it "simply means that the court must ascertain where performance may be considered to have been contemplated for long-arm purposes." *Cypress*, 827 F. Supp. 2d at 717. And although "the agreement does not require performance by [the plaintiff] in Mississippi, the conclusion that [the plaintiff] was to perform at least some part of the contract in Mississippi may fairly be inferred from the substance of the contract." *Id.*

So too here. Although some of B&B's obligations under the Agreement relate to monitoring staff performance in Massachusetts, the Agreement was silent about where B&B was to perform its other contractual obligations. *See* Dkt. [4-1] at 4-7. For example, under the Agreement, B&B was required to conduct orientation and training for staff:

> 1. Responsibilities of Provider.
>    . . .
>    (f)   Orientation and In-Service Training of Staff Members. Provider shall conduct an orientation program for each Staff

> Member upon hire and shall conduct or provide Staff Members with an annual in-service training in the amount required by federal and/or state law for Staff Members to maintain all necessary certifications and licensures.

*Id.* at 4.  And both parties were contractually obligated to protect the other's confidential information:

> 6.    Confidential Information.
>
> (a)    Nondisclosure.  Each party acknowledges that as part of its performance under this Agreement, it may be required to disclose to the other party certain information pertaining to patients (collectively, "Patient Information") and may be required to disclose certain business or financial information (collectively with the Patient Information, "Confidential Information").  Each party agrees that it shall treat Confidential Information with the same degree of care it affords its own similar confidential information . . . .

*Id.* at 7.

The Agreement is silent about where B&B was to perform these obligations, but B&B is a Mississippi limited liability company with an office in Gulfport, Mississippi.  *See* Decl. of B&B [9-1] at 1.  The conclusion that B&B was to perform at least part of the contract in Mississippi "may fairly be inferred from the substance of the contract."  *Cypress*, 827 F. Supp. 2d at 717.  And an affidavit from B&B confirms that the orientation program "for each employee hired to perform work for Integritus . . . occurred in Harrison County, Mississippi."  Decl. of B&B [9-1] at 3.

In addition, the Mississippi Court of Appeals has found the contract prong satisfied where, as here, a contract contained a confidential information clause:

> By entering into the Agreement, Cirlot was contractually obligated to protect Sunny Delight's confidential information, and Sunny Delight

> was likewise contractually bound to protect Cirlot's confidential information.  As Cirlot and its employees are located in Mississippi, Cirlot's performance under this Agreement occurred, at least in part, in Mississippi.

*Cirlot Agency, Inc. v. Sunny Delight Beverage, Co.*, 85 So. 3d 329, 333 (Miss. Ct. App. 2012).

Although it is disputed what activity was intended to take place in Mississippi, at least some of B&B's contractual obligations, such as its obligation to train employees and protect confidential information, occurred in Mississippi.  *See* Dkt. [4-1] at 4, 7.  Viewing conflicts in Plaintiff's favor, *Omni Tech., LLC*, 2019 WL 4739298, at *5, there is personal jurisdiction over Defendant under the contract prong of the Mississippi long-arm statute, *see Cyprus*, 827 F. Supp. 2d at 717; *El Dorado Oil & Gas, Inc.*, 2024 WL 298353, at *3; *Cirlot*, 85 So. 3d at 333.

C.    Due Process

"The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted).  "There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Id.*  "Where a defendant has 'continuous and systematic general business contacts' with the forum state, the court may exercise 'general' jurisdiction over any action

brought against that defendant." *Luv N' care, Ltd.*, 438 F.3d at 469 (quoting

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  But

where the defendant's contacts are "less pervasive," *id.*, the Court may exercise

"specific" jurisdiction over the nonresident defendant if it has "purposefully directed

[its] activities at residents of the forum, and the litigation results from alleged

injuries that arise out of or relate to those activities," *Burger King Corp. v.

Rudzwicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).

1.      The Court does not have General Jurisdiction over Integritus

Integritus is a citizen of Massachusetts, so general jurisdiction exists over it

only if its "'affiliations with [Mississippi] are so continuous and systematic as to

render [it] essentially at home in [Mississippi].'"  *Frank v. PNK (Lake Charles)

L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quoting *Goodyear Dunlop Tires

Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  And as the Fifth Circuit has

explained, *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437 (1952) is

"the only Supreme Court case where general jurisdiction was appropriately

exercised against a corporation, and since *Perkins*, it has become incredibly difficult

to establish general jurisdiction in a forum other than the place of incorporation or

principal place of business."  *Id.* (internal quotation marks and citation omitted).

B&B contends Defendant's "continuous and systematic contact with

Plaintiff's staff during the term of the Agreement," confers general jurisdiction over

Integritus.  Resp. [10] at 5.  To support its position, B&B notes that Defendant

"managed and supervised twenty-two Mississippi residents" and "communicat[ed]

10

directly with Plaintiff in Mississippi." *Id.* at 6.  But these contacts are insufficient to render Defendant at home in Mississippi.  Under the Agreement, B&B provided Integritus with staff to perform work in Massachusetts.  *See* Dkt. [4-1].  Integritus does not own property or operate a facility in Mississippi, *see* Decl. of Integritus [6-1] at 1, nor is it registered to do business in Mississippi, *id.*; *see Frank*, 947 F.3d at 339 (concluding that exercising general jurisdiction was improper where the defendant was not registered to do business in the forum state, had no real property in the forum state, and did not have a bank account or pay taxes in the forum state).  And aside from the contract at issue here, Defendant "has never done business in the State of Mississippi."  Decl. of Integritus [6-1] at 1.

This is not an "exceptional case" where Defendant's operations are "so substantial and of such a nature as to render the corporation at home" in Mississippi.  *Frank*, 947 F.3d at 338.  General jurisdiction does not exist.

2.    The Court has Specific Personal Jurisdiction over Defendant

a.    Specific Jurisdiction

"To establish specific jurisdiction, the plaintiff must show that the nonresident defendant has 'purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 394 (5th Cir. 2024) (alterations in original) (quoting *Burger King*, 471 U.S. at 472).  The Fifth Circuit applies a three-step test for determining whether specific personal jurisdiction exists:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024) (citation omitted).  Each individual claim advanced by a plaintiff must be analyzed for personal jurisdiction separately.  *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

"A single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted," but "contracting alone with a party located in the forum state is not automatically enough to establish sufficient minimum contacts."  *Ancor Holdings,* 114 F.4th at 394-95.  Further, "a plaintiff's unilateral activities in [the forum state] do not constitute minimum contacts where the defendant did not perform any of its obligations in [the forum state], the contract did not require performance in [the forum state], and the contract is centered outside of [the forum state]."  *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).  And "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of" the forum state's laws.  *Id.*  Rather,

when specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum."

12

*Shambaugh*, 91 F.4th at 373 (quoting *Burger King*, 471 U.S. at 479).

b.    Analysis

Turning to the first prong of the Fifth Circuit's test, whether Defendant has sufficient minimum contacts with the forum state, *see id.* at 372, Plaintiff advances six contacts with Mississippi which it contends support its claim that Defendant directed its activities here: (1) "Defendant drafted the Agreement and sent it to Plaintiff for review and execution.  Plaintiff executed the Agreement in Mississippi," Resp. [10] at 5; (2) Defendant sent written requests for staff to Plaintiff in Mississippi and "Plaintiff met the request by sending Mississippi residents to Massachusetts," *id.*; (3) Defendant "utilized twenty-two [] Mississippi residents to perform work at its facilities," *id.*; (4) Defendant "exercised daily management authority over them by directing them to the patients that needed care, instructing them on the type of care needed, and supervising the staff on those procedures," *id.*; (5) "Defendant maintained continuous contact with Plaintiff's staff through its oversight and supervisory role," *id.*; and (6) "Defendant paid Plaintiff's invoices through the factoring company in a different state," which "eventually made their way to Plaintiff in Mississippi," *id.*

It is undisputed that Integritus reached into Mississippi to initiate a multi-year business relationship with B&B, and that this contact formed the genesis of the parties' business relationship.  Dkt. [4-1] at 8 ("This Agreement shall have an initial term of one year . . . and shall automatically renew for successive one-year terms[.]"); *see also Aultman, Tyner & Ruffin, Ltd. v. Cap. Rubber & Specialty Co.*,

13

No. 2:10-cv-223-KS-MTP, 2011 WL 213471, at *9 (S.D. Miss. Jan. 21, 2011) ("Courts have continued to find that the initiation of contact by the defendant to be of considerable importance.") (citing *Command-Aire Corp. v. Ontario Mechanical Sales and Serv. Inc.*, 963 F.2d 90, 94-95 (5th Cir. 1992)).  Defendant initiated contact with B&B in Mississippi, solicited B&B's services in Mississippi, negotiated with B&B, entered into a long-term contract that automatically renewed annually, and contemplated future consequences in Mississippi, such as the possible need for injunctive relief for breaches of the confidentiality agreement.  *See* Dkt. [4-1] at 7-8 ("A party that uses or discloses Confidential Information shall be entitled to injunctive relief to prevent a breach or threatened breach of this section, in addition to all other remedies that may be available.").  In doing so, Integritus "created continuing obligations, between [itself] and residents of the forum."  *Burger King*, 471 U.S. at 475-76 (internal quotation marks omitted).

Moreover, Integritus is more than a "mere passive customer."  *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1009 (5th Cir. 1982).  In *Mississippi Interstate*, the Fifth Circuit examined a contract between a Mississippi trucking firm and a California freight broker.  *Id.* at 1005.  For two months, the defendant "telephoned Mississippi Interstate at its headquarters and sole business office in Mississippi, to order the latter's services in shipping goods from one destination to another."  *Id.*  The defendant argued that it lacked contacts with Mississippi because

> 1) the initial contract discussions were in California; 2) the defendants are all residents of California, and did not act inside Mississippi . . . ; 3)

all shipments originated and terminated in states other than Mississippi; 4) the defendants have no office or place of business in Mississippi, nor have they ever sent representatives there; 5) they solicited no business in Mississippi and had no local advertising or bank accounts there; and 6) with regard to the tort alleged, all acts of the alleged conspirators occurred outside of Mississippi.

*Id.* The Fifth Circuit noted that the defendant's "contact with the State of Mississippi was somewhat minimal, consisting primarily of entering into a contract with a Mississippi corporation and engaging that corporation to deliver certain shipments between states other than Mississippi." *Id.* at 1006. Nonetheless, it considered significant that

> [a]ll shipments were initiated by defendant, the tasks of directing the details of such shipments were ones in which defendants exercised a significant measure of control, the relationship between the parties was sustained (not "single" or "fortuitous"), and the plaintiff performed its part of the undertaking at its sole place of business in Mississippi as was known to the California defendant at the outset of their relations.

*Id.* at 1009. The Fifth Circuit concluded that "although activities under the contract(s) were initiated by the defendant from California, Mississippi was clearly the hub of the parties' activities, from which the Mississippi plaintiff directed at the defendant's order the movement of its trucks throughout the nation." *Id.*

Here, Defendant placed orders with B&B for its staffing needs, controlled what actions the staff performed and their necessary qualifications, and supervised the staff in Massachusetts. *See* Dkt. [4-1] at 5. Although Massachusetts is the place where B&B sent staff, like in *Mississippi Interstate*, Defendant initiated all requests for staff to Plaintiff in Mississippi, Defendant directed the details of when staff were to travel from Mississippi to Massachusetts, and Plaintiff directed its staff to perform work in Massachusetts at Defendant's direction. 681 F.2d at 1009.

15

It is also noteworthy that the parties did not complete the choice of law provision contained in the Agreement which might have given Defendant reason to believe it could not be haled into Mississippi to defend possible suits.  *See* Dkt. [4-1] at 10; *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 1982). And "[r]efusal to make contractually required payments can cause 'foreseeable injuries' in the forum state, making it 'presumptively reasonable . . . to be called to account there for such injuries.'" *Ancor Holdings*,114 F.4th at 395 (quoting *Burger King*, 471 U.S. at 480).

Defendant is correct that some of the contacts cited by Plaintiff are not related to Integritus's contacts with Mississippi and that "a plaintiff's unilateral activities in [the forum] do not constitute minimum contacts where the defendant did not perform any of its obligations in [the forum], the contract did not require performance in [the forum], and the contract is centered outside of [the forum.]" Reply [12] at 8 (quoting *Danziger v. De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 500 (5th Cir. 2022)).

But here, Defendant intentionally reached out to B&B in Mississippi and entered into a long-term business relationship with a Mississippi company and entered into an Agreement which included a confidentiality provision and a clause authorizing injunctive relief for either party.  Defendant argues that "Massachusetts was clearly the hub of the activities under the Agreement because it was where both parties were registered to do business and where all temporary staff were located for performance of the Agreement."  Reply [12] at 10.  But the

16

staff's performance was only one part of the contract.  Defendant first initiated contact with a Mississippi resident and continued to regularly place orders in Mississippi for additional staff, prompting Plaintiff to recruit staff from a pool of Mississippi residents and conduct training in Mississippi.  *See* Decl. of B&B [9-1].  This scenario appears more akin to the relationship in *Mississippi Interstate*, 681 F.2d at 1009, than the cases cited by Defendant.  Considering the parties' actual course of dealings, Defendant purposefully availed itself of the protection of Mississippi.  *See also Sunflower Mgmt. Holding Co., LLC v. Chicot Mem'l Med. Ctr.*, No. 4:19-cv-144-SA-JMV, 2020 WL 13885386, at *5 (N.D. Miss. Sept. 21, 2020) ("It is also true that the Plaintiffs performed a large majority of their work on these contracts onsite in Arkansas, but in light of the Defendant's understanding that the Plaintiffs were operating out of Mississippi and performing at least some of their work there, the 'quality and nature' of the relationship between the parties 'can in no sense be viewed as random, fortuitous, or attenuated.'" (quoting *Burger King*, 471 U.S. at 480)).

The second prong of the due process analysis contemplates whether B&B's claims arise out Defendant's contacts with Mississippi.  *See Shambaugh*, 91 F.4th at 372.  Defendant does not maintain any offices or have any other contact with Mississippi aside from the parties' Agreement.  *See* Decl. of Integritus [6-1].  B&B's breach of contract claim is based on Defendant's alleged breach of that Agreement by defaulting on four payments.  *See* Am. Compl. [4].  Therefore, B&B's breach of contract claim arises from Integritus's contacts with Mississippi.  *See Allegiant*

17

*Physicians Servs., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1114 (N.D. Ga. 1996) (finding the causation prong satisfied where "the Hospital's sole source of contact with Georgia [was] the parties' contract for the provision of anesthesiology services in Massachusetts" because "these services and Defendant Hospital's contract with Plaintiff form the basis of this action").

The same is true for B&B's negligence claim.  B&B alleges that Integritus had a duty to pay its invoices "timely as not to cause harm to Plaintiff's business," and that "Defendant breached that duty by failing to pay the invoices in a timely manner."  Am. Compl. [4] at 6.  Plaintiff's negligence claim is based on Defendant's contact with the forum state—the contract Integritus entered into with B&B—and its alleged breach of that contract.  *See id.* at 3-4, 6.

As to the third prong, the question is whether the assertion of personal jurisdiction over the Defendant is fair and reasonable.  *See Shambaugh*, 91 F.4th at 372.  "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it."  *Id.* (quoting *Burger King*, 471 U.S. at 477).  A court balances "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

18

furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks and citation omitted).

Defendant argues that exercising personal jurisdiction in this case would be unfair because Integritus "does not do business in Mississippi and has never done business in Mississippi," while Plaintiff sent staff to Massachusetts to work at Defendant's facilities in Massachusetts. Reply [12] at 10. According to Defendant, "[t]o require this Massachusetts entity to litigate in Mississippi the claims over services that were provided in Massachusetts reeks of unfairness." *Id.* But this case is not just about what services Plaintiff provided to Defendant in Massachusetts. It is also about whether Defendant complied with its contractual obligations to Plaintiff, including timely paying for its services. *See* Am. Compl. [4]. And Defendant does not cite any specific hardship it would suffer from litigating in Mississippi. *See* Reply [12] at 10.

In contrast, Mississippi has a "manifest interest" in offering remedies to its wronged businesses, *Burger King*, 471 U.S. at 473, and Plaintiff has an interest in convenient and effective relief, *see Ancor Holdings*, 114 F.4th at 395 n.7. Moreover, Integritus entered into a multi-year business relationship with a company domiciled in Mississippi, making it foreseeable that it would be haled into court in Mississippi if it breached the contract. *See id.* at 395. Integritus has not carried its burden of showing that the Court's exercise of personal jurisdiction would be unfair. *See Wien Air Alaska, Inc.*, 195 F.3d at 215.

19

D.    Venue

Finally, Defendant argues that even if the Court finds that it has personal jurisdiction over it, it should nonetheless transfer venue to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404(a).  *See* Reply [12] at 11.  The Court will not consider this argument because it was improperly raised for the first time in Defendant's Reply [12], which Plaintiff has not had the opportunity to address.  *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *McDaniel v. Miss. Baptist Med. Ctr.*, 869 F. Supp. 445, 453 (S.D. Miss. 1994) ("In the interest of fairness, Defendant should not be allowed to raise new grounds for the first time in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response.").

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Integritus Healthcare, Inc.'s Motion [6] to Dismiss for lack of personal jurisdiction is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 8th day of May, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

20